UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADAM P. MCNIECE,<br>    Plaintiff,<br>        v.<br>STATE OF CONNECTICUT,<br>STATE OF CONNECTICUT JUDICIAL BRANCH,<br>J. PAUL VANCE, JR., in his official capacity as the<br>Claims Commissioner for the State of Connecticut,<br>GEORGE JEPSEN in his official capacity as the<br>Attorney General for the State of Connecticut,<br>TOWN OF WATERFORD, and<br>RYAN RYAN DELUCA, LLP,<br>    Defendants. | No. 3:15-cv-1036 (MPS) |

**Ruling and Order**

Adam P. McNiece, proceeding *pro se*, sued the State of Connecticut, the State of Connecticut Judicial Branch ("Judicial Branch"), Claims Commissioner J. Paul Vance, Jr., Attorney General George Jepsen, the Town of Waterford, and the law firm Ryan Ryan Deluca, LLP for violations of various federal and state laws. He brings seven counts. He claims that (1) the State of Connecticut and its Judicial Branch violated the Americans with Disabilities Act ("ADA"), (2) the Town of Waterford violated 42 U.S.C. § 12186, which relates to regulations by the Secretary of Transportation, (3) the State of Connecticut and Commissioner Vance violated his substantive and procedural due process rights, (4) Attorney General George Jepsen has a conflict of interest, (5) the State of Connecticut, the Town of Waterford, and Ryan Ryan Deluca, LLP have violated the Connecticut Freedom of Information Act, (6) the Town of Waterford and Ryan Ryan Deluca, LLP have engaged in a civil conspiracy, and (7) the Judicial Branch, the Town of Waterford, and Ryan Ryan Deluca, LLP have engaged in a civil conspiracy.

The defendants have moved to dismiss in four separate motions. The plaintiff responded to the Town of Waterford's motion to dismiss (ECF No. 46) and to Ryan Ryan Deluca, LLP's

motion to dismiss (ECF No. 42). (ECF Nos. 45, 53.) The plaintiff has not responded to the motions to dismiss filed by the State of Connecticut, the Judicial Branch, and the Attorney General (ECF No. 51) or the one filed by Commissioner Vance (ECF No. 49).

The plaintiff invokes the Court's jurisdiction under 28 U.S.C. §§ 1331 and 1367. The claims allegedly giving rise to federal question jurisdiction are Counts I, II, and III. Because I dismiss Counts I, II, and III, I decline to exercise jurisdiction over Counts IV through VII. 28 U.S.C. § 1367(c)(3).

The following motions by the plaintiff are pending: Motion by Pro Se Litigant to Participate in Electronic Filing (ECF No. 25); Motion for Audio Transcript (ECF No. 26); Motion to Disqualify Attorney General (ECF No. 27); Motion for Injunctive Relief Ending State Sanctioned Dual Agency (ECF No. 28); Motion for Injunctive Relief to Restore Due Process (ECF No. 29); Motion for Injunctive Relief Defining Duties of a Municipal Attorney (ECF No. 31); Motion for Federal Uniformity in Electronic Filing by a Pro Se Litigant (ECF No. 44); Motion to Submit Evidence in Support of Claim (ECF No. 57)[1]; and Motion for Change of Venue (ECF No. 59)[2]. I deny these motions as moot.

I. **Factual Allegations**

The plaintiff makes the following nonconclusory allegations. (ECF No. 1.) When Adam P. McNiece filed his Complaint, he lived in the County of New London, Connecticut. (*Id.* at ¶ 4.) Mr. McNiece now lives near Gainesville, Florida. (M. for Change of Venue, ECF No. 58 at 1.)

---

[1] In the plaintiff's Motion to Submit Evidence in Support of Claim, he attaches a motion from a state court case that appears to involve Mr. McNiece's visitation rights with his child (ECF No. 57-1 at 1), and an article from the Connecticut Law Tribune about the Attorney General's dissatisfaction with Commissioner Vance's decision to give plaintiffs permission to sue Connecticut under circumstances not relevant here (*id.* at 2).

[2] The plaintiff seeks a change of venue to the District of Kansas where, he says all litigants may e-file documents, or a district near Gainesville, Florida, which is near his new home. (ECF No. 58).

The Judicial Branch of Connecticut operates the state court system, including the Human Resource Management Unit, "which is charged with ensuring full compliance with the requirements of the ADA." (ECF No. 1 at ¶¶ 6–7.) J. Paul Vance, Jr., is the Claims Commissioner for Connecticut and "decides who is allowed to sue the State of Connecticut." (*Id.* at ¶ 8.) George Jepsen is the Connecticut Attorney General. (*Id.* at ¶ 9.) Waterford is a municipality in Connecticut. (*Id.* at ¶ 10.) Finally, Ryan Ryan Deluca, LLP is a law firm that represents the Town of Waterford. (*Id.* at ¶ 11.)

> 1. *Count I: ADA Violation Against State of Connecticut and Judicial Branch*

Mr. McNiece "suffers from chronic, debilitating migraines which are triggered by reading text." (*Id.* at ¶ 12.) Around June 30, 2014, Mr. McNiece requested "audio transcripts of court hearings in civil matters in which he is the plaintiff," with "the ADA contact person for the Superior Court located in New London, Connecticut." (*Id.* at ¶¶ 15–16.) At the request of the "Court Planner" in the "State of Connecticut Office of the Executive Director" on July 17, 2014, Mr. McNiece's health care provider answered a series of questions about Mr. McNiece. (*Id.* at ¶¶ 17–18.) "Notwithstanding, no reasonable accommodation was ever provided . . . ."[3] (*Id.* at ¶ 19.)

Around July 24, 2016, Mr. McNiece "filed an ADA Grievance with the Judicial Branch's Human Resource Management Unit to no avail." (*Id.* at ¶ 20.) He "has had numerous court

---

[3] The plaintiff has attached a DVD to the Complaint, which contains an audio recording of a court hearing on two motions to dismiss for lack of jurisdiction in his state case. The state court evidently provided the audio recording to the plaintiff. (ECF No. 51-2 at 22.) The transcript of that hearing is attached to the State of Connecticut's Motion to Dismiss. At the hearing, the plaintiff stated that he had not filed a claim with the Claims Commissioner. (*Id.* at 5.) He also said "[a]nd I can take this [case], because of my ADA claims, straight to the Department of Justice and have federal claim here tomorrow, but I prefer to try to resolve things here." (*Id.* at 16.) The state case is *McNiece v. Connecticut*, KNL-CV14-5014784-S (Conn. Super. Oct. 14, 2014). The court granted the motions to dismiss, but did not dismiss the claims against the Town of Waterford. (ECF No. 51-2 at 28–32.)

hearings since the time that he submitted his initial request for a reasonable accommodation due to his disability and the subsequent ADA Grievance." (*Id.* at ¶ 21.)

        2.        *Count II: Violation of 42 U.S.C. § 12186 Against Town of Waterford*

Mr. McNiece alleges that Waterford has denied him "reasonable ADA accommodations of audio recordings of public meetings." (*Id.* at ¶ 25.)

        3.        *Count III: Substantive and Procedural Due Process Claim Against Commissioner Vance and State of Connecticut*

Mr. McNiece allegedly "is one of many oppressed citizens of the State of Connecticut that is subjugated by a tyrannical abuse of authority" by Commissioner Vance, "who has required the Plaintiff to first submit his claims against the State of Connecticut to his office for a determination of whether the plaintiff can or cannot sue the State, despite clear and ongoing violations of the Plaintiff's state and federal rights." (*Id.* at ¶ 28.) Commissioner Vance "willfully and knowingly denies Plaintiff's fundamental right of due process and other un-enumerated rights in failing to hold our State and its employees accountable or responsible for their own actions or abuses of authority." (*Id.* at ¶ 29.) "The defendant (an appointed lawyer) uses sovereign immunity as a shield to conceal negligence, malfeasance, and corruption of the state and its workers." (*Id.* at ¶ 29.) When the legislature created this system in the 1970s, they "did not recognize its potential for abuse or its contradiction of fundamental law." (*Id.* at ¶ 30.) Commissioner Vance and Connecticut "violate Plaintiff McNiece's rights for a full and fair hearing and a proper path or right of appeal up to and including the United States Supreme Court as promised by the U.S. Constitution." (*Id.* at ¶ 31.) Commissioner Vance, "as authorized by the Defendant State of Connecticut, imposes his will (one man's will) upon all Connecticut Judges with only a statistically impossible chance for appeal through the legislature whom are also mostly lawyers." (*Id.* at ¶ 32.)

    *4.*  *Count IV: Conflict of Interest Against Attorney General Jepsen*

Commissioner Vance uses the Attorney General "to claim sovereign immunity in every case even against suits for reasonable accommodations under the ADA, including the plaintiff's suit." (*Id.* at ¶ 35.) This "positions the Attorney General Defendant by statute against its own mission statement." (*Id.* at ¶ 36.) "Together they completely ignore congressional abrogation of this right for the common good of all citizens of Connecticut." (*Id.*) When a "similar state complaint" was dismissed, the Attorney General said "Not everybody can sue the State of Connecticut." (*Id.* at ¶ 37.)

    *5.*  *Count V: Violation of Conn. Gen. Stat. § 1-200 et seq. Against Waterford,*
      *Ryan Ryan Deluca LLP, and State of Connecticut*

Waterford, Ryan Ryan Deluca, LLP, and the Judicial Branch "share the shame of using taxpayer funded recording equipment to record public meetings and hearings, then refusing access to these meetings or hearings to Plaintiff McNiece and the general public, including but not limited to, reasonable records of ADA accommodation requests submitted by the Plaintiff." (*Id.* at ¶ 40.)

    *6.*  *Count VI: Civil Conspiracy Against Waterford*
      *and Ryan Ryan Deluca, LLP*

Waterford and Ryan Ryan Deluca, LLP "have made no attempt to inform the public of the nature, cost, or defense strategy in pending cases in which Plaintiff McNiece is a party." (*Id.* at ¶ 43.) "[T]hey continually pilfer town coffers with the assistance of the corrupted officials in secretive meetings" and have refused to comply with the plaintiff's ADA accommodation requests. (*Id.* at ¶¶ 43–44.)

       7.       *Count VII: Civil Conspiracy Against the Judicial Branch, Waterford, and Ryan Ryan Deluca, LLP*

Finally, the plaintiff alleges that the Judicial Branch, Waterford, and Ryan Ryan Deluca, LLP have conspired in ten ways, *i.e.*, by (1) "[f]ailing to act on Plaintiff's request for mandamus"; (2) "[e]stablishing and maintaining a bias against pro-se complaints"; (3) "[a]llowing multiple motions to strike"; (4) "[f]ailing to uphold court orders"; (5) "[a]llowing the public and pro-se to be locked out of a courtroom while opposing counsel is allowed to remain inside to argue or influence the court and its personnel"; (6) "[h]olding court proceedings without transcripts"; (7) "[u]se of court reporters over court monitors to add costs in an effort to deter the pro-se"; (8) "[h]olding mini trials to deny the intent and application of the ADA"; (9) "[f]ailing to provide Plaintiff McNiece with ADA accomodations"; and (10) "[a]llowing Ryan Ryan Deluca LLP to proceed in the litigation as counsel for the Town of Waterford without securing writs of informed consent as required by the Connecticut Practice Book Rules." (*Id.* at ¶ 46.)

## II.  Standard of Review

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckkett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In evaluating whether a plaintiff has stated a claim for relief under Rule 12(b)(6), I must "accept as true all factual allegations in the complaint and draw all reasonable inferences" in plaintiff's favor. *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000). I need not accept conclusory

6

allegations and may allow the case to proceed only if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S. at 554–55). When a plaintiff submits a complaint *pro se*, I must construe the allegations liberally, raising "the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Even a *pro se* plaintiff, however, must meet the standard of facial plausibility set forth above. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572, F.3d 66, 73 (2d Cir. 2009)).

### III. Discussion

#### A. Count I: "Discrimination Based on Disability Against Defendant State of Connecticut and Defendant Connecticut Judicial Branch"

The plaintiff has sued Connecticut and the Connecticut Judicial Branch for a violation of the ADA. The State of Connecticut and the Connecticut Judicial Branch move to dismiss the plaintiff's claims against them in their entirety under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). They argue that the Eleventh Amendment, the *Rooker-Feldman* doctrine, and claim preclusion bar this suit, and that the plaintiff has failed to state a claim under Title II of the ADA. (ECF No. 51-1 at 2.)

The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI. Although not proscribed by the text of the amendment, the Supreme Court has held it to bar suits against a state by citizens of the same state. *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). The Eleventh Amendment proscribes suits brought against the State or one of its agencies or departments, regardless of the

type of relief sought unless the State consents to suit, *id.* (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)), or Congress abrogates Eleventh Amendment immunity under § 5 of the Fourteenth Amendment, *Pennhurst State School & Hosp.*, 465 U.S. at 99 (quoting *Quern v. Jordan*, 440 U.S. 332, 342 (1979)). "[T]o determine whether [Congress] has done so in any given case, [a court] 'must resolve two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority.'" *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

Congress unequivocally expressed its intent to abrogate the States' Eleventh Amendment immunity when a State is sued under Title II of the ADA. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."). Further, Congress acted under a valid grant of constitutional authority when it sought to abrogate the States' Eleventh Amendment immunity under Title II where a plaintiff invokes Title II to challenge physical access to state courts. *Lane*, 541 U.S. at 530 ("[W]e find that Title II unquestionably is valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services . . . .").

According to the Second Circuit, "Congress's abrogation of [a defendant's] Eleventh Amendment immunity to [a plaintiff's] Title II claim is valid if [the defendant] violated (1) Title II and (2) [the plaintiff's] right to substantive due process." *Bolmer v. Oliveira*, 594 F.3d 134, 149 (2d Cir. 2010) (citing *U.S. v. Georgia*, 546 U.S. 151, 158–59 (2006)). Although this standard appears to conflate the jurisdictional inquiry with the merits of a case, the Second Circuit has held that "if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at

8

an end." *Mary Jo C. v. New York State & Local Retirement System*, 707 F.3d 144, 152 (2d Cir. 2013).

Title II of the ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A).

As noted above, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. When the Complaint is considered together with documents related to the underlying litigation in state court, it is evident that Mr. McNiece was not "excluded from participation in or [been] denied the benefits of the services, programs, or activities" of the State of Connecticut or the Judicial Branch. 42 U.S.C. § 12132. He alleges that the defendants denied

his request for "audio transcripts of court hearings in civil matters in which he is the plaintiff." (ECF No. 1 at ¶ 16.) But to support this claim, he attaches an audio recording of a state court hearing in a civil matter in which he is the plaintiff. The court told the plaintiff that it would provide recordings of proceedings involving the plaintiff to the extent that it could. (ECF No. 51-2 at 29.) The court said:

> I will say to Mr. McNiece that I am more than sympathetic and empathetic to his concerns for open courts and an informed consent of the governed. Let me narrow the issue back to what I think you're really interested in[:] judicial recordings of proceedings in which you were involved. To the extent that I can give those to you through court order, I will give them to you.
>
> . . .
>
> When you appear before me and you wish to get a recording of the audio proceedings, I will do what I can to order that it be given to you in whatever form the court reporter's office can give it to you.

(*Id.* at 29–30.)

Earlier in the proceeding, Mr. McNiece said "I'm looking for reasonable ADA accommodation, and I want to thank you for giving me that on a case-by-case basis." (*Id.* at 9.) Further, the plaintiff said that he is able to read statutes and the court noted that the plaintiff filed written motions, which belies the notion that audio recordings are necessary for Mr. McNiece to access the courts.[4] (*Id.* at 7, 12).

In light of the materials attached to the Complaint and briefs, Mr. McNiece "cannot state a Title II claim," *Mary Jo C.*, 707 F.3d at 152, because his allegations that the Judicial Branch excluded Mr. McNiece from its activities are not plausible. The audio recording attached by Mr. McNiece shows that the Judicial Branch included him in the judicial process by providing audio

---

[4] Mr. McNiece does say that he "made several claims for transcript requests," but that there was "only one court reporter that that ever fulfilled a transcript request." (ECF No. 51-2 at 16.) That comment appears, however, to refer to written transcripts created by court reporters, not to audio recordings of court proceedings. (*Id.*)

recordings to him and by allowing him to present his arguments orally. To be sure, at one point Mr. McNiece complains that he could not read a ninety-two page document written by the defendants because it was not provided in audio format, (ECF No. 51-2 at 6), but his Complaint does not suggest that he requested audio versions of briefing from the court or that the court was in a position to provide such an accommodation (*see* ECF No. 1 at ¶¶ 12–23).

Because the plaintiff has not alleged that he has been excluded from participation in the activities of the State of Connecticut or the Judicial Branch under Title II, the "sovereign immunity inquiry is at an end." *Mary Jo C.*, 707 F.3d at 152. I dismiss Count I because I lack jurisdiction.

### B.     Count II: "Violation of 42 U.S.C. § 12186 Against Defendant Town of Waterford"

The plaintiff sued the Town of Waterford under 42 U.S.C. § 12186, (ECF No. 1 at ¶¶ 24–26), which authorizes the Secretary of Transportation to issue certain regulations, 42 U.S.C. § 12186. District courts possess "inherent authority" to dismiss actions *sua sponte* as frivolous even where a *pro se* plaintiff has paid the filing fee. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000). An action is frivolous where it is "based on an indisputably meritless legal theory" or presents "factual contentions [which] are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (2d Cir. 1989).

The plaintiff alleges that Waterford "had denied Plaintiff McNiece with reasonable ADA accommodations of audio recordings of public meetings" but does not otherwise allege facts that show that Waterford somehow violated a statute directing the Secretary of Transportation to write regulations. (ECF No. 1 at ¶ 25.)." I dismiss his claim under 42 U.S.C. § 12186 because it is frivolous and fails to state a claim.

Further, although I do not decide this issue, 42 U.S.C. § 12186 does not appear to provide an implied private cause of action under the facts of this case because Congress does not appear to have intended for plaintiffs to be able to sue under this provision. *See McClellen v. Cablevision of Conn., Inc.*, 149 F.3d 161, 164 (2d Cir. 1998) (four-prong analysis for implied private right of action includes whether Congress enacted statute to benefit plaintiff, whether there is explicit or implicit intent to create or deny a private remedy, whether implying a private remedy is consistent with the purpose of the legislative scheme, and whether the action is one traditionally relegated to state law).

Although I dismiss Count II, I also consider whether Mr. McNiece may amend his claim under 42 U.S.C. § 12186. Whether to grant leave to amend is left to the district court's discretion. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "*Pro se* complaints should be liberally construed, and district courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend, unless it would be futile." *Kallas v. Fiala*, 591 F. App'x 30, 31 (2d Cir.2015)) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000)); Fed. R. Civ. P. 15(a). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Because the plaintiff could not allege facts that a town in Connecticut violated a statute directing the United States Secretary of Transportation to issue regulations, granting leave in this case would be futile. Thus, the plaintiff may not amend his claim under 42 U.S.C. § 12186.

### C. Count III: "Denial of Substantive and Procedural Due Process Against Defendant Claims Commissioner and Defendant State of Connecticut"

In Count III, the plaintiff claims that the State of Connecticut and Commissioner Vance violated the plaintiff's substantive and procedural due process rights. Commissioner Vance and the State of Connecticut move to dismiss Count III under the *Rooker-Feldman* doctrine and because the plaintiff lacks standing. As discussed below, I hold that Mr. McNiece does not have standing.

"An important component of the Article III jurisdictional limit of federal courts to deciding 'cases' or 'controversies' is standing." *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386–88 (2014)). The plaintiff must have a personal stake in the litigation because "the plaintiff's genuinely personal stake ensures the presence of 'that concrete adverseness which sharpens the presentation of issues upon which [a] court so largely depends.'" *Cortland Street Recovery Corp. v. Hellas Telecommunications I, S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "Determining that a matter before the federal courts is a proper case or controversy under Article III therefore assumes particular importance in ensuring that the Federal Judiciary respects 'the proper—and properly limited—role of the courts in a democratic society.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quoting *Allen*, 468 U.S. at 750). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *Id.*

"[T]o have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.,* a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.,* a 'fairly . . . trace[able]' connection between the alleged injury in fact and the alleged conduct of

13

the defendant); and (3) redressability (*i.e.,* it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 273–74 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "[T]he injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

The plaintiff has the burden of establishing his standing under Article III. *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to bear the burden of proof of establishing standing. *Id.* "In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint." *Cortland Street Recovery Corp.*, 790 F.3d at 417. Here, the plaintiff has not met his burden of establishing that he has standing to sue for the alleged denial of substantive and procedural due process arising out of the requirement that a person who wishes to sue the State of Connecticut must "first submit his claims . . . to [the Claim Commissioner's] office for a determination of whether the plaintiff can or cannot sue the State . . . ." (ECF No. 1 at ¶ 28.)

The plaintiff has failed to allege or otherwise establish that he suffered or is suffering an injury in fact. While the plaintiff alleges that the Commissioner is violating the plaintiff's rights to a full and fair hearing with the possibility of ultimately appealing to the United States Supreme Court, he does not allege that he has a pending claim before the Commissioner. (ECF No. 1 at ¶ 31.) Further, evidence submitted by the parties confirms that the plaintiff does not have standing. *Makarova*, 201 F.3d at 113 (when considering a Rule 12(b)(1) motion, a court may consider evidence outside of the pleadings). Mr. McNiece filed a recording of a court

hearing in which a state judge asked: "Have you filed a claim with the Commissioner of Claims?" (*See* ECF No. 51-2 at 5 (providing a written transcript of the recording).) Mr. McNiece said "No." (*Id.*) Commissioner Vance provided uncontroverted evidence that Mr. McNiece does not have any pending claims before the Commissioner. (Affidavit of Tara M. DuPont, ECF No. 49-1 at 17.) Further, it is unlikely that Mr. McNiece will need to bring suit against Connecticut because he now lives near Gainesville, Florida. (M. for Change of Venue, ECF No. 58 at 1.)

Mr. McNiece bristles at the statutory function of the Claims Commissioner, which he characterizes as a system in which the Claims Commissioner "imposes his will (one man's will) upon all Connecticut Judges with only a statistically impossible chance for appeal through the legislature whom are mostly lawyers." (ECF No. 1 at ¶ 32.) A person does not have standing to challenge a statute merely because he believes it to be a "contradiction of fundamental law" (*id.* at ¶ 30); he must show that the statute has harmed or will harm him. Mr. McNiece has not done so. Therefore, I dismiss Count III in its entirety.

### D. Counts IV through VII

As discussed above, Counts I through III are dismissed—the only counts that can reasonably be said to raise a federal question. As for the state law claims in Counts IV through VII, jurisdiction of this Court must be based upon supplemental jurisdiction under 28 U.S.C. § 1367. That statute provides that "[t]he district courts may decline to exercise jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). As I have dismissed all the claims over which I allegedly had original jurisdiction, I decline to exercise supplemental jurisdiction over the remaining claims and dismiss Counts IV through VII. *Id.*

## IV. Conclusion

For the reasons discussed above, I GRANT the Town of Waterford's Motion to Dismiss (ECF No. 46), Commissioner Vance's Motion to Dismiss (ECF No. 49), and the State of Connecticut's, the Judicial Branch's, and the Attorney General's Motion to Dismiss (ECF No. 51).

I DENY as moot Ryan Ryan Deluca, LLP's Motion to Dismiss (ECF No. 42), the Motion by Pro Se Litigant to Participate in Electronic Filing (ECF No. 25); the Motion for Audio Transcript (ECF No. 26); the Motion to Disqualify Attorney General (ECF No. 27); the Motion for Injunctive Relief Ending State Sanctioned Dual Agency (ECF No. 28); the Motion for Injunctive Relief to Restore Due Process (ECF No. 29); the Motion for Injunctive Relief Defining Duties of a Municipal Attorney (ECF No. 31); the Motion for Federal Uniformity in Electronic Filing by a Pro Se Litigant (ECF No. 44); the Motion to Submit Evidence in Support of Claim (ECF No. 57); and the Motion for Change of Venue (ECF No. 59).

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         March 22, 2016